IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN MARKS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO:_____ |
| | § | |
| CITY OF MANVEL, TANER TRUITT; | § | |
| THOMAS (KEITH) TRAYLOR; OFFICER | § | |
| RUIZ; and | § | |
| AMANDA ZAWIERUSZYNSKI | § | |
| a/k/a AMANDA SHIPLEY | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, JOHN MARKS complaining about THE CITY OF MANVEL, OFFICER TANER TRUITT IN HIS INDIVIDUAL CAPACITY; OFFICER RUIZ IN HIS INDIVIDUAL CAPACITY; MANVEL POLICE CHIEF THOMAS (KEITH) TRAYLOR IN HIS INDIVIDUAL CAPACITY AND AS POLICY MAKER OR THE CITY OF MANVEL POLICE DEPARTMENT; AND AMANDA ZAWIERUSZYNSKI A/K/A AMANDA SHIPLEY and in support thereof would show unto the Court the following:

## INTRODUCTION

This lawsuit arises from a shocking and flagrant abuse of power by the Manvel Police Department, which resulted in the wrongful arrest, detention, and prosecution of John Marks, a law-abiding Black man. Despite the existence of clear and compelling exculpatory evidence, including comprehensive surveillance footage and the inconsistent, false statements made by

Amanda Zawieruszynski ("AZ"), the Defendants pursued baseless charges against Mr. Marks with reckless disregard for his constitutional rights. This case is not an isolated incident but reflects a time-worn pattern, reminiscent of the injustices depicted in *To Kill a Mockingbird*, where Black men are falsely accused of sexual crimes by white women, and the machinery of law enforcement is all too willing to proceed without question. The parallels are stark: a vulnerable individual subjected to the weight of a flawed justice system, driven by prejudice and a disturbing willingness to ignore the truth. Mr. Marks has suffered severe emotional, financial, and reputational harm as a result of these actions. This lawsuit seeks to hold those responsible accountable for their egregious conduct and to obtain redress for the significant damages inflicted upon Mr. Marks, while shedding light on the broader societal implications of such continued miscarriages of justice.

## PARTIES

1.    **JOHN MARKS** is a resident of Manvel, Texas, in Brazoria County.

2.    **THE CITY OF MANVEL** is a municipality with a police force operating under the color of law in Brazoria County, Texas. Service can be had by serving the City Manager of the City of Manvel, Daniel S. Johnson, at the Manvel City Hall located at 20031 Highway 6, Manvel, Texas 77578. The Clerk of Court is respectfully requested to issue a citation for service on this Defendant and return the same to counsel for John Marks who will forward the same to the appropriate party for service on this Defendant.

3.    **OFFICER TANER TRUITT** is either currently or formerly a police officer working for the City of Manvel Police Department. The facts giving rise to the cause of action asserted by John Marks against Taner Truitt all occurred in Brazoria County. Service can be had upon Taner Truitt at the City of Manvel Police Department, located at 6615 North Masters, Manvel, Texas 77578.

The Clerk of Court is respectfully requested to issue a citation for service on this Defendant and return the same to Counsel for John Marks who will forward the same to the appropriate party for service on this Defendant.

4.      **CHIEF KEITH TRAYLOR** is the police chief of the City of Manvel Police Department. The facts giving rise to the cause of action asserted by John Marks against Chief Keith Traylor all occurred in Brazoria County. Service can be had upon Chief Keith Traylor at the City of Manvel Police Department, located at 6615 North Masters, Manvel, Texas 77578. The Clerk of Court is respectfully requested to issue a citation for service on this Defendant and return the same to Counsel for John Marks who will forward the same to the appropriate party for service on this Defendant.

5.      **OFFICER RUIZ** is either currently or formerly a police officer working for the City of Manvel Police Department, whose full name is currently unknown. Officer Ruiz was involved in the events giving rise to this complaint, specifically conducting an unwarranted search of John Marks' vehicle and home and participating in the excessive use of force during John Marks' arrest. Service can be had upon Officer Ruiz at the City of Manvel Police Department, located at 6615 North Masters, Manvel, Texas 77578. The Clerk of Court is respectfully requested to issue a citation for service on this Defendant and return same to Counsel for John Marks who will forward same to the appropriate party for service on this Defendant. Plaintiff reserves the right to amend this complaint to include the full name of Officer Ruiz once it becomes known.

5.      **AMANDA ZAWIERUSZYNSKI a/k/a AMANDA SHIPLEY** is an individual who at all pertinent times lived in the City of Manvel, Brazoria County, Texas. The actions taken by AZ made the basis of John Marks' claims against her all took place in Brazoria County, Texas. Service

can be had upon AZ by serving her at her residence, 8 Palmero Way, Manvel, Texas 77578-4876. The Clerk of Court is respectfully requested to issue a citation for service on this Defendant and return the same to Counsel for John Marks who will forward the same to the appropriate party for service on this Defendant.

## JURISDICTION AND VENUE

6.      The amount in controversy exceeds this Court's minimum jurisdictional limits, and this Court has jurisdiction under the "federal question" power of the United States District Courts of the Southern District, Galveston Division, and pendent jurisdiction of the asserted state law claims against Defendant AZ. The events giving rise to all causes of action asserted by John Marks all took place in Brazoria County, Texas.

## FACTUAL BACKGROUND

7.      This case epitomizes the egregious misuse of power by the Manvel Police Department, which, through a series of deliberate actions and gross misconduct, led to the wrongful arrest, detention, and defamation of John Marks. Despite the existence of clear exculpatory evidence in the form of surveillance footage and the inconsistent statements of Amanda Zawieruszynski (AZ), the Manvel Police Department persisted in pursuing baseless charges. This factual background provides a comprehensive account of the events leading up to and following John Marks' wrongful arrest, illustrating the full extent of the harm caused by the defendants.

8.      **John Marks' Background and Relationship with AZ**: John Marks, a respected member of the community, moved to Manvel, Texas, in April 2023, where he soon became acquainted with AZ, a neighbor. Over the summer, AZ and John developed a close relationship that became intimate. Their relationship was characterized by mutual trust and frequent social interactions. AZ

often visited John's home, where she was welcomed by John and his family. Their relationship was consensual, and AZ's behavior throughout their interactions consistently demonstrated her willingness to participate in their relationship.

9.     **The Night of the Incident**: On November 9, 2023, John Marks hosted a gathering at his home to celebrate his new residence. John's long-time friend, Detective Freddie Douglas was at his house. Throughout the evening, AZ communicated with John via text, expressing her eagerness to join John and Freddie. AZ arrived at John's home later that evening, bringing cupcakes in celebration of John's new home. The surveillance footage from John's home captures AZ arriving voluntarily, entering the home with no signs of distress or hesitation. Her demeanor upon arrival was relaxed, and she engaged in friendly conversation with the other guest.

10.     **Social Activities and Swimming**: As the evening progressed, AZ participated in various social activities with John and his guest, including swimming in the pool. The surveillance footage shows AZ willingly joining the group in the pool, undressing and entering the water of her own accord. At no point does the footage suggest that AZ was coerced or pressured into participating in these activities. Her interactions with John and Freddie were amicable, and she appeared to be enjoying herself. The footage clearly shows AZ engaging in consensual sexual activity with John Marks and later with Freddie Douglas, with no signs of resistance or discomfort.

11.     **Surveillance Footage Details**: The surveillance system at John Marks' home, which includes multiple cameras and audio recording capabilities, captured the entirety of the evening's events. The footage shows AZ moving freely throughout the house, with multiple opportunities to leave if she had felt threatened or uncomfortable. At one point, AZ is seen inside the house alone, while John and Freddie remain outside by the pool. During this time, AZ had the opportunity to

exit the house but chose to stay. The footage also includes audio recordings of conversations, which further corroborate the consensual nature of the interactions. AZ can be heard speaking in a friendly and relaxed manner, with no indications of fear or coercion.

12.     **Departure and Post-Event Behavior**: The surveillance footage captures AZ leaving John Marks' home at the end of the night. She is seen exiting the house calmly and without any signs of distress. Her departure is consistent with someone who has had an enjoyable evening, rather than someone fleeing from a dangerous situation. The footage further shows that AZ left on good terms, which starkly contradicts her later claims of being held against her will and assaulted.

13.     **The False Allegations**: On December 7, 2023, nearly a month after the incident, AZ reported to the Manvel Police Department that she had been sexually assaulted and kidnapped by John Marks and Freddie Douglas. AZ's claims were filled with inconsistencies and contradicted by the surveillance footage. Despite this, the Manvel Police Department, led by Officer Taner Truitt and Chief Keith Traylor, pursued the charges without conducting a thorough investigation or considering the exculpatory evidence provided by John Marks.

14.     **The Police Interview with AZ**: During her interview with Officer Taner Truitt on November 30, 2023, AZ provided a statement that was riddled with omissions and falsehoods. She claimed that she had been assaulted by John Marks and Freddie Douglas and that she had been afraid for her safety. However, AZ omitted critical details that would have undermined her allegations. She failed to mention her longstanding intimate relationship with John Marks, her voluntary arrival at his home on the night of the incident, and her consensual participation in the evening's activities. AZ also neglected to inform Officer Truitt about the surveillance system in John Marks' home, which had recorded the entire evening and would have disproved her claims.

15. **Material Omissions and False Statements in the Complaint**: When Officer Taner Truitt and Chief Keith Traylor prepared the sworn complaint seeking an arrest warrant for John Marks and Freddie Douglas, they omitted critical exculpatory evidence and presented false and misleading information to Justice of the Peace Richard B. Davis. The complaint failed to mention the existence of surveillance footage that clearly showed AZ's voluntary participation in the evening's events. It also omitted the fact that AZ had a longstanding intimate relationship with John Marks and that she had the opportunity to leave the premises at any time. The complaint falsely claimed that AZ had been held against her will and assaulted, despite the lack of any evidence to support these allegations.

16. **Police Misconduct and Deliberate Omission of Evidence**: The actions of the Manvel Police Department were not only negligent but also indicative of a deliberate attempt to fabricate a case against John Marks. Despite being informed of the existence of surveillance footage that contradicted AZ's allegations, Officer Truitt and Chief Traylor chose to ignore this evidence. They failed to review the footage or include it in their report to the Justice of the Peace. This omission was a clear violation of John Marks' constitutional rights and demonstrates the extent of the misconduct by the Manvel Police Department.

17. **Comments Captured on Surveillance During the Search**: When the Manvel Police Department executed a search warrant at John Marks' home, the surveillance system captured comments made by the officers. At one point, a female officer is heard questioning the validity of AZ's claims, asking, "What if it was consensual? What then?" This comment suggests that even the officers conducting the search had doubts about AZ's allegations. Despite these doubts, the

officers proceeded with the search and arrest, further demonstrating their reckless disregard for the truth.

18. **Tampering with Surveillance Footage**: During the search, there is evidence to suggest that the officers attempted to tamper with the surveillance system. They altered the settings to reduce the retention period of the footage, potentially leading to the loss of critical evidence. Additionally, John Marks was temporarily locked out of the surveillance system, preventing him from accessing the footage that could have exonerated him. These actions by the police officers are indicative of a deliberate attempt to obstruct justice and suppress exculpatory evidence.

19. **The Unjust Arrest**: On December 7, 2023, John Marks was wrongfully arrested by the Manvel Police Department. The arrest was conducted with excessive force, and John was detained without being informed of the charges against him. His requests to speak with a lawyer and a supervisor were ignored, and he was held in a cold, uncomfortable cell for several hours before being transferred to the Brazoria County Jail. The conditions of his detention were inhumane, and the treatment he received was intended to intimidate and break his spirit.

20. **Detention and Violation of Rights**: John Marks was held in the Brazoria County Jail on a $300,000 bond, which he was unable to pay immediately. During his detention, he was denied basic rights, including access to legal counsel and information about the charges against him. The psychological and physical toll of this wrongful detention was severe, leading to significant emotional distress and trauma. John's treatment in custody was part of a broader pattern of systemic abuse by the Manvel Police Department, which routinely violated the rights of those it detained.

21.     **Impact of Media Coverage and Public Scrutiny**: The wrongful arrest and subsequent charges against John Marks garnered significant media attention, particularly in the local community. The coverage was overwhelmingly negative, portraying John as a dangerous criminal based on the false allegations made by AZ. The public scrutiny was intense, with neighbors, colleagues, and even friends beginning to distance themselves from John. This media coverage caused irreparable damage to John's personal and professional reputation, leading to social ostracism and financial ruin.

22.     **The District Attorney's Efforts to Stop the Prosecution**: After reviewing the evidence, including the surveillance footage that had been omitted from the original complaint, the Brazoria County District Attorney's Office recognized the lack of probable cause and the inconsistencies in AZ's statements. Despite this, the Manvel Police Department, led by Chief Traylor, continued to pursue the charges against John Marks. The DA's office attempted to intervene, urging the police to drop the charges due to the overwhelming evidence of John's innocence. However, these efforts were ignored, and the police persisted in their wrongful prosecution.

23.     **Grand Jury Decision**: Ultimately, the case was presented to a Brazoria County Grand Jury, which reviewed the evidence, including the surveillance footage and the inconsistencies in AZ's claims. The Grand Jury found that there was no basis for the charges and issued a no-bill, effectively exonerating John Marks. However, the damage had already been done. John's reputation, financial stability, and emotional well-being were severely impacted by the ordeal.

24.     **Ongoing Damages and Impact on John Marks**: The wrongful arrest and prosecution have had long-lasting effects on John Marks. He has suffered severe emotional distress, including nightmares, anxiety, and depression. His personal relationships have been strained, and he has

been shunned by many in his community. The financial burden of legal fees, coupled with the loss of income and opportunities, has left John in a precarious economic situation. The stigma associated with the false allegations continues to haunt him, and he lives in constant fear of further police action.

25.     **Police Misconduct and Systemic Failures**: The actions of the Manvel Police Department in this case are part of a broader pattern of systemic failures and misconduct. The officers involved, including Officer Truitt, Chief Traylor, and others, demonstrated a blatant disregard for due process and the principles of justice. Their conduct was driven by a desire to secure a conviction at any cost, rather than a commitment to uncovering the truth. This case highlights the urgent need for accountability and reform within the Manvel Police Department to prevent future injustices.

26.     The wrongful actions of the Manvel Police Department, coupled with the false allegations made by AZ, have caused irreparable harm to John Marks. This lawsuit seeks to hold those responsible accountable for their actions and to secure justice for John. The detailed factual background provided here demonstrates the depth of the misconduct and the extent of the damages suffered by John Marks as a result of this egregious abuse of power.

## ARGUMENTS AND ANALYSIS

## COUNT I: *MONELL* VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (CITY OF MANVEL)

27.     Plaintiff incorporates by reference all the factual allegations as stated above.

28.     The City of Manvel, through the MANVEL Police Department, acted under color of state law to deprive John Marks of his constitutional rights, as described herein.

29.     The unconstitutional actions taken against John Marks were carried out pursuant to a policy, custom, or practice of the MANVEL Police Department. These actions include, but are not limited to, the failure to properly investigate serious allegations, the fabrication of evidence, the use of excessive force without probable cause, and the deprivation of John Marks' right to be free from unlawful searches, seizures, and false imprisonment.

30.     On information and belief, the involvement of senior officers, including Chief Keith Traylor, in the misconduct against John Marks indicates that these actions were taken in accordance with, or in the absence of, proper policies, practices, and training. This failure reflects the customs and practices of the MANVEL Police Department, which demonstrate a deliberate indifference to the rights of individuals, including John Marks.

31.     The City of Manvel is liable under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), which establishes that a municipality can be held liable under 42 U.S.C. § 1983 when the execution of a government's policy or custom inflicts the injury. The Fifth Circuit has consistently applied Monell to hold municipalities liable when a plaintiff demonstrates a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001).

32.     The failure of the City of Manvel to adequately train, supervise, and discipline its officers, particularly with respect to the investigation of criminal allegations and the protection of civil rights, amounts to deliberate indifference to the rights of citizens like John Marks and Freddie Douglass, showing a pattern of similar constitutional violations. The Fifth Circuit has held that a municipality's failure to train its employees adequately can serve as the basis for § 1983 liability

when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); see also Connick v. Thompson, 563 U.S. 51, 61 (2011) (requiring a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference).

33.     The MANVEL Police Department, as an arm of the City of Manvel, has demonstrated a pattern of unconstitutional behavior, as evidenced by the actions taken against John Marks and Freddie Douglas. The department's customs, practices, and policies, or lack thereof, directly led to the wrongful arrest, excessive use of force, and malicious prosecution of John Marks. The Fifth Circuit has found that even isolated incidents of misconduct can trigger municipal liability if the incident is caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010).

34.     The City of Manvel is liable under 42 U.S.C. § 1983 for the violations of John Marks' constitutional rights due to the established customs, practices, and policies within the MANVEL Police Department, or the failure to implement necessary policies to prevent such violations. As held in *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000), a single incident can trigger Monell liability if it is shown that the incident was caused by a policy or practice of the municipality, even if it was informal.

35.     As a direct and proximate result of these policies, customs, and practices, John Marks suffered violations of his constitutional rights, leading to severe emotional distress, financial losses, damage to his reputation, and other harms.

36.    John Marks seeks to hold the City of Manvel accountable for these constitutional violations and seeks all available damages, including compensatory, punitive, and exemplary damages, as well as attorney's fees and any other relief the Court deems just and proper.

## COUNT II: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (OFFICER TANER TRUITT)

37.    Plaintiff incorporates by reference all the factual allegations as stated above.

38.    Officer Taner Truitt, in his individual capacity and under color of law as a certified police officer for the City of Manvel, intentionally and with reckless disregard for the truth, caused the issuance of an arrest warrant for John Marks on charges of aggravated sexual assault and kidnapping.

39.    Officer Truitt made false and misleading statements to Justice of the Peace Richard B. Davis and omitted material information that, if disclosed, would have prevented the issuance of the arrest warrant.

40.    After John Marks' arrest, Officer Truitt continued to pursue prosecution despite evidence of John's actual innocence.

41.    Officer Truitt's actions directly resulted in the violation of John Marks' civil rights and the damages he sustained.

42.    This conduct constitutes a violation of 42 U.S.C. § 1983.

43.    Relevant case law includes *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995), which states that an officer's failure to investigate adequately before arrest can support a claim under § 1983,

and *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992), which emphasizes that an officer can be liable if he knew or should have known that there was no probable cause for the arrest.

## COUNT III: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (CHIEF KEITH TRAYLOR)

44.     Plaintiff incorporates by reference all the factual allegations as stated above.

45.     Chief Keith Traylor, acting under the color of state law as Police Chief of the Manvel Police Department, participated in and witnessed the arrest of John Marks.

46.     Chief Traylor, as the top policymaker for the Manvel Police Department, had the power to set and enforce department policy and procedure.

47.     Chief Traylor knew or was recklessly indifferent to the fact that the sworn complaint upon which the arrest warrant was issued did not evidence probable cause.

48.     He knew or was recklessly indifferent to the fact that Officer Truitt made false and misleading statements in his sworn complaint and omitted materially relevant facts.

49.     By endorsing, ratifying, and participating in the arrest of John Marks, Chief Traylor gave the method and manner of John's arrest the status of being consistent with Manvel Police Department policy.

50.     This conduct constitutes a violation of 42 U.S.C. § 1983.

51.      Relevant case law includes *Anderson v. Creighton*, 483 U.S. 635 (1987), which holds that officers are liable under § 1983 for actions that violate clearly established statutory or

constitutional rights, and *Pierson v. Ray*, 386 U.S. 547 (1967), which affirms that officers can be held liable for actions taken in bad faith or with malice.

## COUNT IV: VIOLATION OF JOHN MARKS' 4th AMENDMENT CIVIL RIGHTS: 42 U.S.C. § 1983 AGAINST OFFICER RUIZ IN HIS INDIVIDUAL CAPACITY

52.     Plaintiff incorporates by reference all the factual allegations as stated above and in addition would show unto the Court that Officer Ruiz, in his individual capacity, under color of law as a certified police officer for the City of Manvel, did intentionally and/or with reckless disregard for the truth, violate John Marks' constitutional rights through multiple unlawful actions.

53.     On or about December 7, 2023, Officer Ruiz conducted an unwarranted search of John Marks' vehicle and home without probable cause or reasonable suspicion, in violation of the Fourth Amendment right to be free from unreasonable searches and seizures.

54.     This search resulted in the seizure of personal property, including John Marks' phone and valuables.

55.     During the unlawful search, Officer Ruiz tampered with John Marks' security cameras by altering the settings from 180 days to 60 days and freezing his Google camera.

56.     This action aimed at destroying exculpatory evidence and obstructing justice, violating John Marks' rights to due process and fair trial under the Fourteenth Amendment.

57.     Officer Ruiz used excessive force during the arrest of John Marks, despite no resistance or threat posed by him.

58. The force used was not justified under the circumstances, violating the Fourth Amendment right against unreasonable seizures, as established in *Graham v. Connor*, 490 U.S. 386 (1989) and *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009).

59. Despite John Marks' repeated requests to speak to a supervisor and a lawyer, Officer Ruiz ignored these requests and continued the search and detention, violating John Marks' Sixth Amendment right to counsel and Fourteenth Amendment right to due process, as established in *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Texas v. Cobb*, 532 U.S. 162 (2001).

60. Officer Ruiz detained John Marks in a holding cell from 10:00 pm until 5:00 am before transferring him to Brazoria County jail.

61. During this time, John Marks was denied basic rights, including information about the charges against him and access to legal counsel.

62. This prolonged detention without justifiable cause violates the Fourth and Fourteenth Amendments, as established in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

63. The actions of Officer Ruiz directly and proximately caused John Marks to suffer severe emotional distress, financial losses, and damage to his personal and professional reputation.

64. The conduct of Officer Ruiz constitutes a violation of 42 U.S.C. § 1983, as it deprived John Marks of rights secured by the Constitution and laws of the United States.

65. Pursuant to 42 U.S.C. § 1983, John Marks seeks all damages available under the law.

## COUNT IV: LIBEL, SLANDER, AND DEFAMATION OF CHARACTER (AMANDA ZAWIERUSZYNSKI)

66.     Plaintiff incorporates by reference all the factual allegations as stated above.

67.     AZ made false statements alleging that John Marks raped and kidnapped her.

68.      AZ knew these statements were false and it was reasonably foreseeable that John Marks would be arrested as a result.

69.     The arrest of John Marks generated media coverage that published AZ's false, slanderous, and defamatory statements, attacking John's reputation both professionally and personally.

70.     As a result, John Marks has sustained damage to his professional and personal reputation, suffered personal mental anguish, and incurred economic loss.

71.     Relevant case law includes *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), which states that individuals may recover for defamation if they can prove that the false statements were made with knowledge of their falsity or with reckless disregard for the truth, and *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which emphasizes that false statements made with actual malice are actionable in defamation cases.

## COUNT V: MALICIOUS PROSECUTION (AMANDA ZAWIERUSZYNSKI)

70.     Plaintiff incorporates by reference all the factual allegations as stated above.

71.     AZ falsely reported to the MANVEL Police Department that she had been raped and kidnapped by John Marks.

72.     The MANVEL Police Department, relying solely on AZ's allegations, sought and obtained an arrest warrant against John Marks.

73. John Marks was arrested on December 7, 2023, and was forced to post a $300,000 bond. The charges against him were ultimately no-billed by the Brazoria County Grand Jury.

74. AZ's false reports were made with malice and led to baseless criminal charges against John Marks.

75. But for AZ's false statements, the arrest and prosecution of John Marks would not have occurred.

76. As a result, John Marks has sustained damages, including legal fees, mental anguish, and damage to his reputation.

77. Relevant case law includes *Albright v. Oliver*, 510 U.S. 266 (1994), which allows for a § 1983 claim based on malicious prosecution if the prosecution results in a deprivation of liberty, and *Smith v. Gonzales*, 670 F.2d 522 (5th Cir. 1982), which holds that individuals can be liable for malicious prosecution if they initiate criminal proceedings without probable cause.

## DAMAGES

78. John Marks incorporates by reference all the factual allegations and claims as stated above and in addition would show unto the Court the following comprehensive damages he seeks against all Defendants:

   a) Lost wages from the time of wrongful arrest and detention to the present.

   b) Diminished earning capacity due to damage to professional reputation and the emotional and psychological impact of the Defendants' actions.

   c) Estimated lost earnings over Plaintiff's expected working life.

d) Reimbursement for all reasonable and necessary attorney's fees and costs incurred in defending against the false criminal charges and prosecuting this civil rights and tortious conduct lawsuit.

e) Compensation for medical expenses incurred as a direct result of the Defendants' actions, including psychological counseling and therapy, medical treatment for physical injuries sustained during arrest and detention, and future medical and psychological expenses reasonably anticipated due to ongoing trauma and distress.

f) Damages for the severe emotional distress, mental anguish, and suffering experienced in the past and that will, in reasonable probability, occur in the future as a result of the Defendants' actions.

g) Emotional trauma from the wrongful arrest, detention, and prosecution.

h) Mental anguish from the loss of personal freedom and public humiliation.

i) Anxiety, depression, and post-traumatic stress disorder (PTSD) symptoms resulting from the Defendants' misconduct.

j) Compensation for the damage to his personal and professional reputation caused by the false allegations, wrongful arrest, and media coverage.

k) Loss of professional opportunities and standing in the community.

l) Social ostracism and damage to personal relationships.

m) Damages for the loss of enjoyment of life and the inability to engage in normal activities and pursuits due to the emotional and psychological impact of the Defendants' actions.

n) Punitive damages against the individual Defendants (Officer Taner Truitt, Chief Thomas (Keith) Traylor, and Officer Ruiz) for their willful, wanton, and malicious

conduct, including deliberate fabrication and omission of evidence, excessive use of force and unlawful detention, tampering with evidence to obstruct justice, and malicious prosecution and abuse of power.

o) Exemplary damages in accordance with Texas Civil Practice and Remedies Code § 41.001 et seq. to serve as a deterrent and to set an example against such egregious conduct by law enforcement officers and other defendants.

## **PRAYER FOR RELIEF**

79.     WHEREFORE, PREMISES CONSIDERED, John Marks prays that the Defendants be cited to appear and answer herein, and that upon final trial, judgment be entered for John Marks against the Defendants, jointly and severally, for:

1. Economic damages, including lost wages, diminished earning capacity, legal fees, and medical expenses.

2. Non-economic damages, including emotional distress, mental anguish, damage to reputation, and loss of enjoyment of life.

3. Punitive damages against the individual Defendants for their willful and malicious conduct.

4. Exemplary damages in accordance with Texas law.

5. Pre-judgment and post-judgment interest at the highest rate allowed by law.

6. Costs of court.

7. Reasonable and necessary attorney's fees incurred in prosecuting this action.

8. Such other and further relief, both general and special, at law or in equity, to which John Marks may be justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable

## ALL CONDITIONS PRECEDENT

All conditions precedent to the filing of this lawsuit have occurred or have been performed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, John Marks prays that the Defendants be cited to appear before this Court and that upon full and final hearing that he be awarded full and just damages for injury caused by the wrongful conduct of the Defendants and for all other relief, in equity and at law, to which he may show himself justly entitled.

Respectfully submitted,

**STAFFORD MOORE, PLLC**
/s/*Justin A. Moore*_____
**Justin A. Moore**
State Bar No. 24088906
justin@staffordmoore.law
www.staffordmoore.law
**Paul K. Stafford**
State Bar No. 00791716
STAFFORD MOORE, PLLC
325 N. St. Paul Street, Suite 2210
Dallas, Texas 75201
Telephone (Main): (214) 764-1529
Telephone (Direct): (214) 764-1531
Facsimile: (214) 580-8104
**ATTORNEYS FOR PLAINTIFF**
**JOHN MARKS**