**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JOHN MARKS and FREDDIE DOUGLAS, | § § § | |
| *Plaintiffs,* | § | CASE NO: 3:24-CV-00243 |
| v. | § § | |
| CITY OF MANVEL, TANER TRUITT; THOMAS (KEITH) TRAYLOR; OFFICER EDGAR RUIZ; and AMANDA ZAWIERUSZYNSKI a/k/a AMANDA SHIPLEY | § § § § § § | |
| *Defendants.* | § § | |

<u>**PLAINTIFFS' JOINT COMPLAINT**</u>

COME NOW, FREDDIE DOUGLAS complaining about THE CITY OF MANVEL, OFFICER TANER TRUITT IN HIS INDIVIDUAL CAPACITY; OFFICER EDGAR RUIZ IN HIS INDIVIDUAL CAPACITY; MANVEL POLICE CHIEF THOMAS (KEITH) TRAYLOR IN HIS INDIVIDUAL CAPACITY AND AS POLICY MAKER FOR THE CITY OF MANVEL POLICE DEPARTMENT; and AMANDA ZAWIERUSZYNSKI A/KA/ AMANDA SHIPLEY and JOHN MARKS complaining of THE CITY OF MANVEL; OFFICER TANER TRUITT IN HIS INDIVIDUAL CAPACITY, OFFICER RUIZ IN HIS INDIVDUAL CAPACITY; MANVEL POLICE CHIEF THOMAS (KIETH) TRAYLOFR IN HIS INDIVIDUAL CAPACITY AND AS POLICY MAKER FOR THE CITY OF MANVEL POLICE DEPARTMENT AND AMANDA ZAWIERUSZYNSKI A/K/A AMANDA SHIPLEY  and in support thereof would show unto the Court the following:

<u>**PARTIES**</u>

1.      **FREDDIE DOUGLAS** is a resident citizen of El Campo, Texas, in Wharton County.

2.      **JOHN MARKS** is a resident of Manvel, Texas, in Brazoria County.

3.      **THE CITY OF MANVEL** is a municipality with a police force operating under the color of law in Brazoria County Texas. Defendant has made an appearance herein. (DOUGALS AND MARKS DEFENDANT)

4.      **TANER TRUITT** is a police officer working for The City of Manvel Police Department. The facts giving rise to the cause of action asserted by Freddie Douglas and John Marks against Taner Truitt all occurred in Brazoria County. Defendant has made an appearance herein. (DOUGLAS AND MARKS DEFENDANT)

5.      **CHIEF THOMAS (KEITH) TRAYLOR** (Hereinafter Chief Keith Traylor) is the police chief of the City of Manvel Police Department. The facts giving rise to the cause of action asserted by Freddie Douglas and John Marks against Chief Keith Traylor all occurred in Brazoria County. Defendant has made an appearance herein. (DOUGLAS AND MARKS DEFENDANT)

6.      **OFFICER EDGAR RUIZ** is a police officer for the City of Manvel Police Department. The facts giving rise to the cause of action against Officer Edgar Ruiz all occurred in Brazoria County. Defendant has made an appearance herein. (MARKS DEFENDANT)

7.      **AMANDA ZAWIERUSZYNSKI A/KA/ AMANDA SHIPLEY** (Hereinafter AZ) is an individual who at all pertinent times lived in the City of Manvel, Brazoria County, Texas. Defendant has made an appearance herein. (DOUGLAS AND MARKS DEFENDANT)

<strong>JURISDICTION AND VENUE</strong>

8.      The amount in controversy is in excess of this Court's minimum jurisdictional limits and this Court had jurisdiction under the "federal question" power of the United States District Courts of the Southern District, Galveston Division and pendent jurisdiction of the asserted state law claims against Defendant AZ. The events giving rise to all causes of action asserted by Freddie Douglas and John Marks all took place in Brazoria County, Texas.

---

**FREDDIE DOUGLAS' FACTUAL BACKGROUND**

9.      This is another disturbing case of an abuse of state power by a police department. Ironically, that abuse was directed towards one of their own. Freddie Douglas was a police detective with the El Campo Police Department.  Freddie Douglas was a distinguished member of the El Campo Police Department. He had served honorably for El Campo PD since 2011, earning "Officer of the Year" in 2020. Freddie Douglas grew up in El Campo. He was a star athlete at El Campo High School. Freddie Douglas enjoyed a good reputation in El Campo as an honest and fair police officer. That all changed on December 7, 2023. The Manvel Police Department arrested Freddie Douglas and charged him with aggravated sexual assault without probable cause. In fact, had the officers involved, which included the Chief of Manvel Police Department, done the slightest bit of investigation, they would have discovered that the allegations by the Complainant were objectively and demonstrably false.

10.      Freddie Douglas was at the El Campo Police Department headquarters on December 7, 2023, helping to construct a float for the Christmas parade. The chief of police for El Campo PD, David Marcaurele, approached him in the parking lot and asked him where his service weapon was located. Freddie Douglas replied that it was in his police cruiser where he always kept it when he was at the El Campo Police Department station. Chief Marcaurele said, "Freddie, I have bad news, you are being charged with aggravated sexual assault. I need you to come inside." Freddie Douglas complied. Chief Marcaurele led him into his office. Within minutes, the Chief of Police for the Manvel Texas Police Department, Keith Traylor and officer Taner Truitt entered the office and placed Freddie Douglas under arrest. Of course, Freddie Douglas asked what this was all about. Officer Taner Truitt of the Manvel Police Department informed Freddie Douglas that he has been accused of aggravated rape by Amanda Zawieruszynski who was also known as Amanda Shipley (Hereinafter AZ). Freddie Douglas had only met AZ one time. He immediately knew that he had

done nothing wrong and that there was indisputable evidence that would objectively prove his innocence.

11.     Freddie Douglas met AZ for the first time at the home of John Marks on or about November 8, 2023. It was the day before Freddie Douglas' birthday. He and John Marks had planned to go to a Rockets game that night. Freddie Douglas arrived at John Mark's home in the early afternoon. That is when Freddie Douglas met AZ for the first time. AZ lived across the street from John Marks. She was married. However, she had told John Marks that she was divorced. AZ and John Marks had a long-standing dating and intimate relationship. AZ had been to John Marks' home many times and spent the night many times. It was not surprising that she came over that day. She even brought cupcakes in honor of Freddie Douglas' birthday. AZ was interested in meeting with Freddie Douglas and John Marks later that evening after the Rockets game. In fact, she texted John Marks several times during the Rockets game to confirm that Freddie Douglas and John Marks planned on returning to John's home a take a late-night swim in his pool. Freddie Douglas and John Marks returned to Mr. Marks' home around 10:00 p.m. AZ arrived a short time later ready to swim in the pool and have drinks to celebrate Freddie's birthday. No one became intoxicated. At some point, John Marks and AZ started having consensual sex in the pool. After that, AZ wanted to have sex with Freddie Douglas and did. This sexual contact was completely consensual on the part of all involved. Freddie Douglas knew this version of events was true and knew that he could objectively prove it because John Marks' home is equipped with a sophisticated security camera system that captured the events in question.

12.     Within minutes of his arrest, Freddie Douglas told Officer Truitt including the Manvel Police Chief Keith Traylor, that there was surveillance video proof that everything that happened at John Marks home the evening of November 8, 2023, and the early morning hours of November 9, 2023, involving AZ was completely consensual. Freddie Douglas freely told Officer Truitt and Chief Traylor what happened that night. He made it clear that any sexual contact between AZ and

himself or John Marks was completely consensual. At about the same time, Chief Sparks was arresting John Marks. John Marks was telling the Manvel Police Department the same thing. John Marks told them that not only was there a surveillance system but that he had preserved the video from that night, and it showed that AZ's participation in the events of that night was completely consensual.

13.     The arrest of Freddie Douglas came as a complete surprise to him. Manvel Police Department had not interviewed him about AZ's claims. Manvel Police Department had not interviewed John Marks about AZ's claim. The Manvel Police Department had not even attempted to contact either Freddie Douglas or John Marks for their side of the story regarding AZ's claims. However, within minutes of their arrest, both Douglas and Marks made it clear to the Manvel Police Department that there was proof that AZ's claims were fabricated. In addition to arresting Freddie Douglas and John Marks that day, the Manvel Police Department executed a search warrant at John Marks' home. Initially, they were not aware that they were being recorded on Mr. Marks' security system. One of the Manvel PD officers executing the search warrant is heard to say, "The Ranger says that Marks claims he has video of everything and wants to know if we can obtain that…" A female officer upon hearing that states, "what if it was consensual? What then?" A discussion of whether AZ's false report was a crime then ensues. The point is, within minutes of Freddie Douglas' arrest, the Manvel Police Department knew that there was objective evidence that would determine who was being truthful, AZ or Douglas and Marks. This included both Officer Truitt and Chief Traylor.  That did not deter Officer Truitt or Chief Traylor or the Manvel Police Department. Freddie Douglas was booked on charges of felony aggravated sexual assault and bond was set at $100,000.00. Freddie's mother helped him post bond, costing $10,000.00 in non-refundable fees, and Freddie Douglas was out of jail the next day. While in jail, Freddie only asked for one thing, a blanket because his cell was extremely cold. He was ignored by the Brazoria County jail personnel.

**14.** Within hours of Douglas and Marks' arrests, the Manvel Police Department had full access to the video captured by Mark's security system. Any reasonable person who looked at this evidence would conclude that AZ's version of events was fabricated. It was objectively and undisputably established by the video surveillance tapes that AZ was a willing participant in the sexual encounters and was never held against her will in any way. Despite access to this evidence, Officer Truitt, Chief Traylor, and the Manvel Police Department persisted. The charges were not dropped. The Manvel Police Department acting by and through Officer Truitt and Chief Traylor aggressively pursued these charges in the face of overwhelming evidence that the charges against Douglas and Marks were false.

**15.** The consequences of Officer Truitt, Chief Traylor and the Manvel Police Department's stubborn refusal to admit they had violated Freddie Douglas' constitutional rights had devastating consequences. El Campo Police Department summarily terminated his employment with the force and reported his arrest to the appropriate State of Texas agencies. Feddie Douglas not only lost his job as a police officer, but he was also stripped of his license as a Texas Peace Officer. The media coverage was unrelenting. Brazoria County and Wharton County are lightly populated and rural. Every small-town paper in the area printed headlines that El Campo Police Detective Freddie Douglas had been arrested and charged with felony aggravated sexual assault and that he had been fired from the El Campo Police Department. Freddie Douglas had to sell his house in a fire sale to fund his defense. As Freddie Douglas moved around the small town of El Campo, the stares and whispers followed him everywhere, the grocery store, Walmart, getting gas, at stop lights. In a town like El Campo, if a police officer is arrested and fired summarily by the department, everyone assumes that the accused is guilty. Only Freddie Douglas' closest friends and family supported him during this time. The result nearly crushed Freddie Douglas' spirit. His future looked very dark. It appeared he might never recover from this unjust accusation enabled by Officer Truitt, Chief Traylor and the Manvel Police Department's blind acceptance and prosecution.

**16.**    The facts regarding how this happened are even more disturbing. AZ was interviewed by Manvel Police Department Officer Taner Truitt.  This interview did not occur until November 30, 2023, almost three weeks after the alleged events. AZ is a white female. John Marks and Freddie Douglas are Black Americans. Officer Truitt showed great deference to AZ's version of events. This in spite of the fact that AZ admitted to having a long-standing affair with John Marks and having gone to his house with "cupcakes" earlier in the afternoon on the day of the alleged events. AZ admitted to Officer Truitt that she voluntarily returned to Marks' home to go swimming, arriving in a bathing suit under a t-shirt. AZ admitted to Officer Truitt that she had "texted" John Marks while he and Freddie Douglas were at the Rockets game making sure she was still invited to Marks' home for a late-night swim. AZ even admitted to Officer Truitt that it was not unusual for her to go to Marks' home late at night and swim in his pool. She claimed that this time however, when Marks wanted to swim naked in the pool and have sex, she said no. She claimed that she tried to fight Marks off. She claimed that he then pushed her over to Freddie Douglas who had sex with her while she was trying to fight him off. Most interestingly, she claimed she was afraid of both Marks and Douglas but had no evidence that either Douglas or Marks had threatened her. She insisted that Manvel PD arrest both Marks and Douglas immediately because of this unfounded fear. Officer Truitt tells her during this interview that he must first get in contact with Douglas and Marks to "get their side of the story" because the "DA would never sign off on an arrest warrant without doing that first. No one at Manvel PD ever tried to get Douglas' or Marks' side of the story before they arrested them. No one at Manvel PD ever consulted with the Brazoria County District Attorney's office regarding whether probable cause existed based solely on AZ's account of events. Officer Truitt filled out an incomplete, false and misleading "Complaint" seeking an arrest warrant for both Douglas and Marks. Officer Truitt presented the false and misleading sworn "Complaint" to a Justice of the Peace in Brazoria County named Richard B. Davis. In this "Complaint," sworn to by Officer Truitt, JP Davis was *not* told the following material facts:

- That no one from Manvel Police Department or anyone else had approached or interviewed either Freddie Douglas or John Marks prior to the Complaint.

- That Manvel Police Department had not conferred with the Brazoria County District Attorney's office regarding obtaining an arrest warrant for Douglas and Marks.

- That Freddie Douglas was a decorated veteran of the El Campo Police Department in good standing with the department and the State of Texas.

- That AZ had a longstanding "intimate dating relationship" with John Marks prior to the alleged events on November 8, 2023, and had visited his home for overnight stays on many occasions.

- That AZ went to John Mark's home voluntarily earlier in the day on November 8, 2023.

- That AZ is Caucasian and Douglas and Marks are both Black Americans.

- That AZ did not report this claimed rape for almost 3 weeks after the alleged date of the offence.

- That AZ was insistent upon an immediate arrest of both Douglas and Marks before their side of the story could be collected.

- That there was a sophisticated security video system in the Marks' home that likely would reveal whether any crime had occurred as alleged by AZ.

17.    Further, the Complaint sworn out by Officer Truitt was inaccurate, false and/or misleading in the following respects:

- That the sexual conduct between Douglas and AZ was against the will of AZ and without her consent.

- That the sexual conduct between Marks and AZ was against the will of AZ and without her consent.

- That AZ was held against her will at any time in Marks' home.

- That AZ "yelled" and "fought" against Douglas and Marks while they were having sex.

- That Marks removed AZ's bathing suit forcefully and she didn't want to swim naked in the pool with Douglas and Marks.

18.    The fact that these allegations in the Sworn Complaint submitted to Justice of the Peace Davis were false, inaccurate and/or misleading is indisputable. The video evidence from the Marks' surveillance footage establishes AZ's consent and ability to come and go as she pleases all during

the time she was at the Mark's home on the dates in question. The surveillance video shows consensual sex between Marks and AZ. Marks took a video with his cell phone showing AZ willingly having intercourse with Freddie Douglas without any resistance at all. Surveillance video shows AZ jumping into the pool without her bathing suit enjoying her time at Marks' home. Surveillance video shows AZ happily swimming in the pool as she yells to Marks, "you will have to buy me flowers first…"  Surveillance video shows AZ leaving the pool area on her own with Marks and Douglas still outside by the pool. Douglas and Marks remain outside in the pool area while AZ is inside the home alone for an extended period during which she could have left at any time.

19.    At no time did Officer Truitt, Chief Traylor or anyone at the Manvel Police Department inform Justice of the Peace Davis that they had omitted relevant and important information from Officer Truitt's sworn Complaint seeking and arrest warrant for Freddie Douglas. At no time did Officer Truitt, Chief Traylor or anyone at the Manvel Police Department inform Justice of the Peace Davis that the Complaint also contained factual claims that were false, misleading and/or inaccurate. At no time did Officer Truitt, Chief Traylor or anyone at the Manvel Police Department ever inform Justice of the Peace Davis that they had seen video evidence that objectively proved that the claims of AZ were false and that no rape occurred. The persecution of Douglas and Marks continued, even after Officer Truitt, Chief Traylor and Manvel Police Department knew that AZ had been completely untruthful about being raped and kidnapped.  Their unrelenting illegal pursuit of Freddie Douglas only came to a halt when the case finally made its way to the Brazoria County District Attorney's office on its way to a Brazoria County Grand Jury no-bill.

20.    When Douglas' Attorneys confronted the Brazoria County District Attorney's Office with the evidence in this case, they disavowed any knowledge about anything related to the case. Once educated about the evidence, the assistant district attorneys assigned to the case admitted that had the Complaint sworn to by Officer Truitt and ratified by Chief Traylor been presented to them, they

would have opposed the issuance of an arrest warrant. They were not consulted. Justice of the Peace Davis was misled, and information was concealed from him that would have made a difference. Had Justice of the Peace Davis been told the truth, no arrest warrant would ever have been issued. The circumvention of the Brazoria County District Attorneys' Office by Officer Truitt, Chief Traylor, and the Manvel Police Department demonstrates their desire to arrest Douglas and Marks regardless of whether probable cause existed to make the arrests.

21.    The District Attorney of Brazoria County was in a tough spot. The Manvel Police Department was doubling down on its persecution of Douglas and Marks. They could not convince Manvel PD to stop pursuing the charges. They had little choice but to submit the case to a grand jury. However, in this case, it was harder to get an indictment from the grand jury than the proverbial "ham sandwich." The Brazoria Grand Jury no-billed both Freddie Douglas and John Marks. The Manvel PD never brought any charges against AZ for making a false police report.

22.    AZ lied to the Manvel Police Department regarding her interactions with Freddie Douglas. AZ filed false allegations that she was raped by Freddie Douglas. AZ made false allegations that she was kidnapped by Freddie Douglas. AZ caused false criminal charges to be filed against Freddie Douglas. AZ's conduct was malicious and led to baseless criminal charges against Freddie Douglas resulting in his arrest and detention. Freddie Douglas was forced to incur massive expenses to post bond and hire attorneys to defend himself against the malicious prosecution instigated by AZ's false allegations.  The allegations made against Freddie Douglas were false and defamatory and those false statements were a proximate cause of irreparable damage to Freddie Douglas' reputation both individually and professionally as a police officer. While the false nature of AZ's allegations of rape against Freddie Douglas was demonstrably false, had the Manvel Police Department simply questioned Freddie Douglas and/or John Marks prior to issuing an arrest warrant, they did not and the resulting arrest of Freddie Douglas became front page news in Wharton County, Texas and beyond. It was foreseeable that AZ's false allegations of rape against a respected officer of the law

and the malicious prosecution that ensued would lead to massive media coverage that would permanently sully the reputation of Freddie Douglas.

## JOHN MARKS' FACTUAL BACKGROUND

23.     This case epitomizes the egregious misuse of power by the Manvel Police Department, which, through a series of deliberate actions and gross misconduct, led to the wrongful arrest, detention, and defamation of John Marks. Despite the existence of clear exculpatory evidence in the form of surveillance footage and the inconsistent statements of Amanda Zawieruszynski (AZ), the Manvel Police Department persisted in pursuing baseless charges. This factual background provides a comprehensive account of the events leading up to and following John Marks' wrongful arrest, illustrating the full extent of the harm caused by the defendants.

24.     **John Marks' Background and Relationship with AZ:** John Marks, a respected member of the community, moved to Manvel, Texas, in April 2023, where he soon became acquainted with AZ, a neighbor. Over the summer, AZ and John developed a close relationship that became intimate. Their relationship was characterized by mutual trust and frequent social interactions. AZ often visited John's home, where she was welcomed by John and his family. Their relationship was consensual, and AZ's behavior throughout their interactions consistently demonstrated her willingness to participate in their relationship.

25.     **The Night of the Incident**: On November 9, 2023, John Marks hosted a gathering at his home to celebrate his new residence. John's long-time friend, Detective Freddie Douglas was at his house. Throughout the evening, AZ communicated with John via text, expressing her eagerness to join John and Freddie. AZ arrived at John's home later that evening, bringing cupcakes in celebration of John's new home. The surveillance footage from John's home captures AZ arriving voluntarily, entering the home with no signs of distress or hesitation. Her demeanor upon arrival was relaxed, and she engaged in friendly conversation with the other guest.

26.     **Social Activities and Swimming:** As the evening progressed, AZ participated in various social activities with John and his guest, including swimming in the pool. The surveillance footage shows AZ willingly joining the group in the pool, undressing and entering the water of her own accord. At no point does the footage suggest that AZ was coerced or pressured into participating in these activities. Her interactions with John and Freddie were amicable, and she appeared to be enjoying herself. The footage clearly shows AZ engaging in consensual sexual activity with John Marks and later with Freddie Douglas, with no signs of resistance or discomfort.

27.     **Surveillance Footage Details**: The surveillance system at John Marks' home, which includes multiple cameras and audio recording capabilities, captured the entirety of the evening's events. The footage shows AZ moving freely throughout the house, with multiple opportunities to leave if she had felt threatened or uncomfortable. At one point, AZ is seen inside the house alone, while John and Freddie remain outside by the pool. During this time, AZ had the opportunity to exit the house but chose to stay. The footage also includes audio recordings of conversations, which further corroborate the consensual nature of the interactions. AZ can be heard speaking in a friendly and relaxed manner, with no indications of fear or coercion.

28.     **Departure and Post-Event Behavior:** The surveillance footage captures AZ leaving John Marks' home at the end of the night. She is seen exiting the house calmly and without any signs of distress. Her departure is consistent with someone who has had an enjoyable evening, rather than someone fleeing from a dangerous situation. The footage further shows that AZ left on good terms, which starkly contradicts her later claims of being held against her will and assaulted.

29.     **The False Allegations**: On December 7, 2023, nearly a month after the incident, AZ reported to the Manvel Police Department that she had been sexually assaulted and kidnapped by John Marks and Freddie Douglas. AZ's claims were filled with inconsistencies and contradicted by the surveillance footage. Despite this, the Manvel Police Department, led by Officer Taner Truitt

and Chief Keith Traylor, pursued the charges without conducting a thorough investigation or considering the exculpatory evidence provided by John Marks.

30.     **The Police Interview with AZ**: During her interview with Officer Taner Truitt on November 30, 2023, AZ provided a statement that was riddled with omissions and falsehoods. She claimed that she had been assaulted by John Marks and Freddie Douglas and that she had been afraid for her safety. However, AZ omitted critical details that would have undermined her allegations. She failed to mention her longstanding intimate relationship with John Marks, her voluntary arrival at his home on the night of the incident, and her consensual participation in the evening's activities. AZ also neglected to inform Officer Truitt about the surveillance system in John Marks' home, which had recorded the entire evening and would have disproved her claims.

31.     **Material Omissions and False Statements in the Complaint**: When Officer Taner Truitt and Chief Keith Traylor prepared the sworn complaint seeking an arrest warrant for John Marks and Freddie Douglas, they omitted critical exculpatory evidence and presented false and misleading information to Justice of the Peace Richard B. Davis. The complaint failed to mention the existence of surveillance footage that clearly showed AZ's voluntary participation in the evening's events. It also omitted the fact that AZ had a longstanding intimate relationship with John Marks and that she had the opportunity to leave the premises at any time. The complaint falsely claimed that AZ had been held against her will and assaulted, despite the lack of any evidence to support these allegations.

32.     **Police Misconduct and Deliberate Omission of Evidence**: The actions of the Manvel Police Department were not only negligent but also indicative of a deliberate attempt to fabricate a case against John Marks. Despite being informed of the existence of surveillance footage that contradicted AZ's allegations, Officer Truitt and Chief Traylor chose to ignore this evidence. They failed to review the footage or include it in their report to the Justice of the Peace. This omission

was a clear violation of John Marks' constitutional rights and demonstrates the extent of the misconduct by the Manvel Police Department.

33.    **Comments Captured on Surveillance During the Search:** When the Manvel Police Department executed a search warrant at John Marks' home, the surveillance system captured comments made by the officers. At one point, a female officer is heard questioning the validity of AZ's claims, asking, "What if it was consensual? What then?" This comment suggests that even the officers conducting the search had doubts about AZ's allegations. Despite these doubts, the officers proceeded with the search and arrest, further demonstrating their reckless disregard for the truth.

34.    **Tampering with Surveillance Footage**: During the search, there is evidence to suggest that the officers attempted to tamper with the surveillance system. They altered the settings to reduce the retention period of the footage, potentially leading to the loss of critical evidence. Additionally, John Marks was temporarily locked out of the surveillance system, preventing him from accessing the footage that could have exonerated him. These actions by the police officers are indicative of a deliberate attempt to obstruct justice and suppress exculpatory evidence.

35.    **The Unjust Arrest**: On December 7, 2023, John Marks was wrongfully arrested by the Manvel Police Department. The arrest was conducted with excessive force, and John was detained without being informed of the charges against him. His requests to speak with a lawyer and a supervisor were ignored, and he was held in a cold, uncomfortable cell for several hours before being transferred to the Brazoria County Jail. The conditions of his detention were inhumane, and the treatment he received was intended to intimidate and break his spirit.

36.    **Detention and Violation of Rights**: John Marks was held in the Brazoria County Jail on a $300,000 bond, which he was unable to pay immediately. During his detention, he was denied basic rights, including access to legal counsel and information about the charges against him. The psychological and physical toll of this wrongful detention was severe, leading to significant

emotional distress and trauma. John's treatment in custody was part of a broader pattern of systemic abuse by the Manvel Police Department, which routinely violated the rights of those it detained.

37.    **Impact of Media Coverage and Public Scrutiny**: The wrongful arrest and subsequent charges against John Marks garnered significant media attention, particularly in the local

38.    community. The coverage was overwhelmingly negative, portraying John as a dangerous criminal based on the false allegations made by AZ. The public scrutiny was intense, with neighbors, colleagues, and even friends beginning to distance themselves from John. This media coverage caused irreparable damage to John's personal and professional reputation, leading to social ostracism and financial ruin.

39.    **The District Attorney's Efforts to Stop the Prosecution**: After reviewing the evidence, including the surveillance footage that had been omitted from the original complaint, the Brazoria County District Attorney's Office recognized the lack of probable cause and the inconsistencies in AZ's statements. Despite this, the Manvel Police Department, led by Chief Traylor, continued to pursue the charges against John Marks. The DA's office attempted to intervene, urging the police to drop the charges due to the overwhelming evidence of John's innocence. However, these efforts were ignored, and the police persisted in their wrongful prosecution.

40.    **Grand Jury Decision**: Ultimately, the case was presented to a Brazoria County Grand Jury, which reviewed the evidence, including the surveillance footage and the inconsistencies in AZ's claims. The Grand Jury found that there was no basis for the charges and issued a no-bill, effectively exonerating John Marks. However, the damage had already been done. John's reputation, financial stability, and emotional well-being were severely impacted by the ordeal.

41.    **Ongoing Damages and Impact on John Marks**: The wrongful arrest and prosecution have had long-lasting effects on John Marks. He has suffered severe emotional distress, including nightmares, anxiety, and depression. His personal relationships have been strained, and he has been shunned by many in his community. The financial burden of legal fees, coupled with the loss of

income and opportunities, has left John in a precarious economic situation. The stigma associated with the false allegations continues to haunt him, and he lives in constant fear of further police action.

42.     **Police Misconduct and Systemic Failures**: The actions of the Manvel Police Department in this case are part of a broader pattern of systemic failures and misconduct. The officers involved, including Officer Truitt, Chief Traylor, and others, demonstrated a blatant disregard for due process and the principles of justice. Their conduct was driven by a desire to secure a conviction at any cost, rather than a commitment to uncovering the truth. This case highlights the urgent need for accountability and reform within the Manvel Police Department to prevent future injustices.

43.     The wrongful actions of the Manvel Police Department, coupled with the false allegations made by AZ, have caused irreparable harm to John Marks. This lawsuit seeks to hold those responsible accountable for their actions and to secure justice for John. The detailed factual background provided here demonstrates the depth of the misconduct and the extent of the damages suffered by John Marks as a result of this egregious abuse of power.

**COUNT I**
**VIOLATION OF FREDDIE DOUGLAS' CIVIL RIGHTS: 42 USCS §1983**
**CITY OF MANVEL**

44.     The Manvel Police Department's arrest and charging of Freddie Douglas violated Freddie Douglas' constitutionally protected right to not be arrested without probable cause protected by the Fourth Amendment of the United States Constitution. The Manvel Police Department ratified the conduct of its officers in arresting and charging Freddie Douglas by and through the participation in the arrest and charging of Freddie Douglas by the Chief of Police of the Manvel Police Department, Chief Keith Traylor. As a result of this ratification, the City of Manvel and the Manvel Police Department are also liable for any violation of the civil rights of Freddie Douglas under 42

USCS §1983.  The participation in the arrest of Freddie Douglas by Manvel Police Chief Keith Traylor ratified the illegal arrest as Manvel Police Department policy allowing the arrest without probable cause as well as the pursuit of those charges after evidence of innocence is discovered by the Manvel Police Department. The unlawfulness of the arrest and charging of Freddie Douglas was clearly established both before the arrest and charging and at the time of the arrest and charging and was sufficiently clear so that every reasonable official would understand that said arrest and charging was unlawful. The investigation into the allegations of criminal conduct on the part of Freddie Douglas was plainly incompetent and within minutes of his arrest, knowingly illegal on the part of the Manvel Police Department. In spite of this knowledge, Chief Keith Traylor endorsed the illegal arrest thereby giving it the stamp of approved policy on the part of the City of Manvel and the Manvel Police Department.  The Manvel Police Department obtained an arrest warrant from Justice of the Peace Richard B. Davis by and through deception. The Manvel Police Department omitted from the sworn Complaint alleging criminal conduct on the part of Freddie Douglas important relevant material information that if disclosed would have resulted in Justice of the Peace Davis refusing to issue an arrest warrant. The Manvel Police Department provided material false and misleading information in the Complaint seeking an arrest warrant for Freddie Douglas from Justice of the Peace Davis. The Chief of Manvel Police Department either knew or was recklessly indifferent to the accuracy and truthfulness of the sworn Complaint submitted by Officer Truitt and thereby ratified the deceptive behavior as the policy of the City of Manvel and the Manvel Police Department. Had the sworn Complaint seeking an arrest warrant for Freddie Douglas not included these material false and misleading statements but in fact included the facts known to the Manvel Police Department at the time of sworn Complaint seeking an arrest warrant or within hours of the actual arrest of Freddie Douglas, Justice of the Peace Davis would either have not issued the arrest warrant or rescinded same when informed of the true facts. The Manvel Police Department, as sanctioned by the Manvel Police Chief Keith Traylor, made these material false and misleading

statements in the arrest Complaint intentionally and/or with a reckless disregard for the truth. It is obvious that no reasonably competent officer or police department would have instituted and/or continued prosecution of charges against Freddie Douglas based on the evidence collected in their investigation. Pursuant to 42 USCS §1983 Freddie Douglas seeks reasonable and necessary attorney's fees in the past as well as those in the future for both the defense of the baseless charges filed against him and for the prosecution of this claim for violation of his civil rights.

### COUNT I: *MONELL* VIOLATION OF JOHN MARKS CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (CITYOF MANVEL)

45.     Plaintiff John Marks incorporates by reference all the factual allegations as stated above.

46.     The City of Manvel, through the MANVEL Police Department, acted under color of state law to deprive John Marks of his constitutional rights, as described herein.

47.     The unconstitutional actions taken against John Marks were carried out pursuant to a policy, custom, or practice of the MANVEL Police Department. These actions include, but are not limited to, the failure to properly investigate serious allegations, the fabrication of evidence, the use of excessive force without probable cause, and the deprivation of John Marks' right to be free from unlawful searches, seizures, and false imprisonment.

48.     On information and belief, the involvement of senior officers, including Chief Keith Traylor, in the misconduct against John Marks indicates that these actions were taken in accordance with, or in the absence of, proper policies, practices, and training. This failure reflects the customs and practices of the MANVEL Police Department, which demonstrate a deliberate indifference to the rights of individuals, including John Marks.

*49.*     The City of Manvel is liable under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), which establishes that a municipality can be held liable under 42 U.S.C. § 1983 when the execution of a government's policy or custom inflicts the injury. The Fifth Circuit has consistently applied Monell to hold municipalities liable when a plaintiff demonstrates

a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001).

50.     The failure of the City of Manvel to adequately train, supervise, and discipline its officers, particularly with respect to the investigation of criminal allegations and the protection of civil rights, amounts to deliberate indifference to the rights of citizens like John Marks and Freddie Douglass, showing a pattern of similar constitutional violations. The Fifth Circuit has held that a municipality's failure to train its employees adequately can serve as the basis for § 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); see also *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (requiring a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference.)

51.     33. The MANVEL Police Department, as an arm of the City of Manvel, has demonstrated a pattern of unconstitutional behavior, as evidenced by the actions taken against John Marks and Freddie Douglas. The department's customs, practices, and policies, or lack thereof, directly led to the wrongful arrest, excessive use of force, and malicious prosecution of John Marks. The Fifth Circuit has found that even isolated incidents of misconduct can trigger municipal liability if the incident is caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010).

52.     The City of Manvel is liable under 42 U.S.C. § 1983 for the violations of John Marks' constitutional rights due to the established customs, practices, and policies within the MANVEL Police Department, or the failure to implement necessary policies to prevent such violations. As held in *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000), a single incident can trigger Monell liability if it is shown that the incident was caused by a policy or practice of the municipality, even if it was informal.

**53.**    As a direct and proximate result of these policies, customs, and practices, John Marks suffered violations of his constitutional rights, leading to severe emotional distress, financial losses, damage to his reputation, and other harms.

**54.**    John Marks seeks to hold the City of Manvel accountable for these constitutional violations and seeks all available damages, including compensatory, punitive, and exemplary damages, as well as attorney's fees and any other relief the Court deems just and proper.

**COUNT II**
**VIOLATION OF FREDDIE DOUGLAS' CIVIL RIGHTS:**
**OFFICER TANER TRUIT.**

**55.**    Freddie Douglas incorporates by reference all the factual allegations as stated above and in addition would show unto the Court that Officer Taner Truitt, in his individual capacity, under color of law as a certified police officer for the City of Manvel, did intentionally and or with a reckless disregard for the truth cause to be issued an arrest warrant for Freddie Douglas for the charges of aggravated sexual assault. Officer Truitt, with the endorsement of his Chief of Police at the Manvel Police Department, in fact arrested Freddie Douglas and placed him in jail wrongfully. Officer Truitt, with the endorsement of Chief of Police of the Manvel Police Department Traylor, did make false and misleading statements to a justice of the peace and omitted material information to obtain an arrest warrant for Freddie Douglas. Had Officer Truitt been truthful and not omitted material information in his sworn Complaint seeking an arrest warrant, the justice of the peace would not have issued an arrest warrant. The actions of Officer Truitt in his individual capacity were a proximate cause of the violation of Freddie Douglas' civil rights and the damages he sustained as a proximate result.

**COUNT II: VIOLATION OF JOHN MARK'S CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(OFFICER TANER TRUITT)**

**56.**    Plaintiff incorporates by reference all the factual allegations as stated above.

57.　　Officer Taner Truitt, in his individual capacity and under color of law as a certified police officer for the City of Manvel, intentionally and with reckless disregard for the truth, caused the issuance of an arrest warrant for John Marks on charges of aggravated sexual assault and kidnapping.

58.　　Officer Truitt made false and misleading statements to Justice of the Peace Richard B. Davis and omitted material information that, if disclosed, would have prevented the issuance of the arrest warrant.

59.　　After John Marks' arrest, Officer Truitt continued to pursue prosecution despite evidence of John's actual innocence.

60.　　Officer Truitt's actions directly resulted in the violation of John Marks' civil rights and the damages he sustained.

61.　　This conduct constitutes a violation of 42 U.S.C. § 1983.

62.　　Relevant case law includes *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995), which states that an officer's failure to investigate adequately before arrest can support a claim under § 1983, and *Sanders v. English*, 950 F.2d 1152 (5th Cir. 1992), which emphasizes that an officer can be liable if he knew or should have known that there was no probable cause for the arrest.

## COUNTY III
## VIOLATION OF FREDDIE DOUGLAS' CIVIL RIGHTS:
## CHIEF KEITH TRAYLOR.

63.　　Freddie Douglas incorporates all the factual allegations as stated above and in addition would show unto the Court the Chief of the Manvel Police Department, Keith Traylor, actually participated in and witnessed the arrest of Freddie Douglas. Chief Traylor was acting under the color of the state as Police Chief of the Manvel Police Department at the time of the arrest of Freddie Douglas in and in the course of his participation in the arrest of Freddie Douglas.  Chief Traylor knew or was recklessly ignorant that the sworn Complaint upon which the arrest warrant was issued did not evidence probable cause for the arrest. Chief Traylor knew or was recklessly ignorant of the

fact that Office Truitt made false and/or misleading statements in his sworn Complaint seeking an arrest warrant for Freddie Douglas. Chief Traylor, as Chief of Police of Manvel Police Department, enabled, endorsed and ratified Office Truitt's quest to arrest Freddie Douglas without probable cause giving the method and manner of Freddie Douglas' arrest the status of being consistent with the policy of the Manvel Police Department. But for Chief Taylor's, endorsement, ratification and participation in the arrest of Freddie Douglas, the wrongful illegal arrest of Freddie Douglas would not have occurred. The actions of Chief Traylor in his individual capacity were a proximate cause of the violation of Freddie Douglas' civil rights and the damages proximately caused by said violation.

## COUNT III: VIOLATION OF JOHN MARK'S CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (CHIEF KEITH TRAYLOR)

64.    Plaintiff incorporates by reference all the factual allegations as stated above.

65.    Chief Keith Traylor, acting under the color of state law as Police Chief of the Manvel Police Department, participated in and witnessed the arrest of John Marks.

66.    Chief Traylor, as the top policymaker for the Manvel Police Department, had the power to set and enforce department policy and procedure.

67.    Chief Traylor knew or was recklessly indifferent to the fact that the sworn complaint upon which the arrest warrant was issued did not evidence probable cause.

68.    He knew or was recklessly indifferent to the fact that Officer Truitt made false and misleading statements in his sworn complaint and omitted materially relevant facts.

69.    By endorsing, ratifying, and participating in the arrest of John Marks, Chief Traylor gave the method and manner of John's arrest the status of being consistent with Manvel Police Department policy.

70.     This conduct constitutes a violation of 42 U.S.C. § 1983.

71.     Relevant case law includes *Anderson v. Creighton*, 483 U.S. 635 (1987), which holds that officers are liable under § 1983 for actions that violate clearly established statutory or constitutional rights, and *Pierson v. Ray*, 386 U.S. 547 (1967), which affirms that officers can be held liable for actions taken in bad faith or with malice.

## COUNT IV
### FREDDIE DOUGLAS - LIBEL, SLANDER, AND DEFAMATION OF CHARACTER: (AMANDA ZAWIERUSZYNSKI)

72.     AZ made false statements regarding Freddie Douglas, alleging that he raped her and kidnapped her. AZ knew these statements were false. It was reasonably foreseeable that Freddie Douglas would be arrested as a result of the false statements by AZ. It was reasonably foreseeable that the arrest of Freddie Douglas would generate media coverage that would publish AZ's false, slanderous and defamatory statements. AZ's false, slanderous and defamatory statements attacked the reputation of Freddie Douglas both professionally and personally. As a proximate result, Freddie Douglas has sustained damage to his professional reputation and personal reputation and economic loss both in the past and future.

## COUNT IV:
### JOHN MARKS - LIBEL, SLANDER, AND DEFAMATION OF CHARACTER (AMANDA ZAWIERUSZYNSKI)

73.     Plaintiff incorporates by reference all the factual allegations as stated above.

74.     AZ made false statements alleging that John Marks raped and kidnapped her.

75.     AZ knew these statements were false and it was reasonably foreseeable that John Marks would be arrested as a result.

76.     The arrest of John Marks generated media coverage that published AZ's false, slanderous, and defamatory statements, attacking John's reputation both professionally and personally.

77.     As a result, John Marks has sustained damage to his professional and personal reputation, suffered personal mental anguish, and incurred economic loss.

**78.**    Relevant case law includes *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), which states that individuals may recover for defamation if they can prove that the false statements were made with knowledge of their falsity or with reckless disregard for the truth, and *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which emphasizes that false statements made with actual malice are actionable in defamation cases.

**COUNT V:**
**VIOLATION OF JOHN MARKS' 4th AMENDMENT CIVIL RIGHTS: U.S.C. § 1983 AGAINST OFFICER EDGAR RUIZ IN HIS INDIVIDUAL CAPACITY**

**79.**    Plaintiff John Marks incorporates by reference all the factual allegations as stated above and in addition would show unto the Court that Officer Ruiz, in his individual capacity, under color of law as a certified police officer for the City of Manvel, did intentionally and/or with reckless disregard for the truth, violate John Marks' constitutional rights through multiple unlawful actions.

**80.**    On or about December 7, 2023, Officer Ruiz conducted an unwarranted search of John Marks' vehicle and home without probable cause or reasonable suspicion, in violation of the Fourth Amendment right to be free from unreasonable searches and seizures.

**81.**    This search resulted in the seizure of personal property, including John Marks' phone and valuables.

**82.**    During the unlawful search, Officer Ruiz tampered with John Marks' security cameras by altering the settings from 180 days to 60 days and freezing his Google camera.

**83.**    This action aimed at destroying exculpatory evidence and obstructing justice, violating John Marks' rights to due process and fair trial under the Fourteenth Amendment.

**84.**    Officer Ruiz used excessive force during the arrest of John Marks, despite no resistance or threat posed by him.

**85.**    The force used was not justified under the circumstances, violating the Fourth Amendment right against unreasonable seizures, as established in *Graham v. Connor*, 490 U.S. 386 (1989) and *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009).

86.     Despite John Marks' repeated requests to speak to a supervisor and a lawyer, Officer Ruiz ignored these requests and continued the search and detention, violating John Marks' Sixth Amendment right to counsel and Fourteenth Amendment right to due process, as established in *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Texas v. Cobb*, 532 U.S. 162 (2001).

87.     Officer Ruiz detained John Marks in a holding cell from 10:00 pm until 5:00 am before transferring him to Brazoria County jail.

88.     During this time, John Marks was denied basic rights, including information about the charges against him and access to legal counsel.

89.     This prolonged detention without justifiable cause violates the Fourth and Fourteenth Amendments, as established in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

90.     The actions of Officer Ruiz directly and proximately caused John Marks to suffer severe emotional distress, financial losses, and damage to his personal and professional reputation.

91.     The conduct of Officer Ruiz constitutes a violation of 42 U.S.C. § 1983, as it deprived John Marks of rights secured by the Constitution and laws of the United States.

92.     Pursuant to 42 U.S.C. § 1983, John Marks seeks all damages available under the law.

### COUNT V
### FREDDIE DOUGLAS - MALICIOUS PROSECUTION
### (AMANDA ZAWIERUSZYNSKI)

93.     AZ falsely reported to the Manvel Police Department that she had been raped and kidnapped by Freddie Douglas. The Manvel Police Department, relying solely on the allegations of AZ, sought and obtained an arrest warrant against Freddie Douglas for aggravated sexual assault. Freddie Douglas was arrested by the Manvel Police Department on December 7, 2023, for aggravated sexual assault. Freddie Douglas was forced to post a $100,000.00 bond prior to trial. The charges against Freddie Douglas were presented to a duly empaneled Grand Jury in Brazoria County. The Brazoria County Grand Jury no-billed the charges against Freddie Douglas. Freddie Douglas was objectively and demonstrably innocent of any criminal activity regarding AZ. There was no

probable cause to arrest or charge Freddie Douglas with aggravated sexual assault of AZ. AZ intentionally and knowingly lied and acted with malice when she falsely reported to the Manvel Police Department that she had been raped and kidnapped by Freddie Douglas. But for AZ's intentional and knowing providing material false information to the Manvel Police Department, the arrest and prosecution of Freddie Douglas would not have occurred. As a proximate result of AZ's procuring of the arrest and prosecution of Freddie Douglas, Freddie Douglas has sustained damages both in the past and future.

### COUNT VI: JOHN MARKS - MALICIOUS PROSECUTION (AMANDA ZAWIERUSZYNSKI)

94.     Plaintiff incorporates by reference all the factual allegations as stated above.

95.     AZ falsely reported to the MANVEL Police Department that she had been raped and kidnapped by John Marks.

96.     The MANVEL Police Department, relying solely on AZ's allegations, sought and obtained an arrest warrant against John Marks.

97.     John Marks was arrested on December 7, 2023, and was forced to post a $300,000 bond. The charges against him were ultimately no-billed by the Brazoria County Grand Jury.

98.     74. AZ's false reports were made with malice and led to baseless criminal charges against John Marks.

99.     75. But for AZ's false statements, the arrest and prosecution of John Marks would not have occurred.

100.     76. As a result, John Marks has sustained damages, including legal fees, mental anguish, and damage to his reputation.

101.     77. Relevant case law includes *Albright v. Oliver*, 510 U.S. 266 (1994), which allows for § 1983 claim based on malicious prosecution if the prosecution results in a deprivation of liberty, and

*Smith v. Gonzales*, 670 F.2d 522 (5th Cir. 1982), which holds that individuals can be liable for malicious prosecution if they initiate criminal proceedings without probable cause.

## COUNT VI
### FREDDIE DOUGLAS - DAMAGES - CIVIL RIGHTS: 42 USCS §1983
### CITY OF MANVEL

102.    As a result of the violation of 42 USCS §1983 by the City or Manvel and by and through the Manvel Police Department, Freddie Douglas seeks all elements of damage authorized by law including but not limited to:

A.  Reasonable and necessary attorney's fees incurred to defend against the false criminal charges prosecuted by the City of Manvel by and through the Mavel Police Department.

B.  Reasonable and necessary attorney's fees in the past incurred for the prosecution of this violation of civil rights claim against the City of Manvel by and through the Manvel Police Department.

C.  Lost earnings and earning capacity in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

D.  Lost earnings and earning capacity that will in reasonable probability occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

E.  Mental Anguish in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Mavel by and through the Manvel Police Department.

F.  Mental Anguish that in reasonable probability will occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

G.  Injury to reputation in the past proximately caused by violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

H.  Injury to reputation that will in reasonable probability occur in the future proximately caused by the violation of the civil rights of Freddie Douglas by the City of Manvel by and through the Manvel Police Department.

I.  Medical expenses in the past incurred by Freddie Douglas proximately caused by violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

J.  Medical expenses in the future that will in reasonable probability be incurred by Freddie Douglas, that are proximately caused by the violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

## COUNT VII
## FREDDIE DOUGLAS - DAMAGES-CIVIL RIGHTS: 42 USCS §1983
## OFFICER TANER TRUITT IN HIS INDIVIDUAL CAPACITY

103.    As a result of the violation of 42 USCS §1983 by Officer Taner Truitt in his individual capacity, Freddie Douglas seeks all elements of damage authorized by law including but not limited to:

A. Reasonable and necessary attorney's fees incurred to defend against the false criminal charges prosecuted by the City of Manvel by and through the Mavel Police Department.

B. Reasonable and necessary attorney's fees in the past incurred for the prosecution of this violation of civil rights claim against the City of Manvel by and through the Manvel Police Department.

C. Lost earnings and earning capacity in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

D. Lost earnings and earning capacity that will in reasonable probability occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

E. Mental Anguish in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Mavel by and through the Manvel Police Department.

F. Mental Anguish that in reasonable probability will occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

G. Injury to reputation in the past proximately caused by violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

H. Injury to reputation that will in reasonable probability occur in the future proximately caused by the violation of the civil rights of Freddie Douglas by the City of Manvel by and through the Manvel Police Department.

I. Medical expenses in the past incurred by Freddie Douglas proximately caused by violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

J. Medical expenses in the future that will in reasonable probability be incurred by Freddie Douglas, that are proximately caused by the violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

K. Exemplary damages in accordance with the Texas Civil Practice and Remedies Code §41.001 et seq.

**COUNT VIII**
**FREDDIE DOUGLAS - DAMAGES-VIOLATION OF CIVIL RIGHTS: 42 USCS §1983**
**CHIEF KEITH TRAYLOR**

104. As a result of the violation of 42 USCS §1983 by Manvel Chief of Police Keith Traylor, in his individual capacity, Freddie Douglas seeks all elements of damage authorized by law including but not limited to:

A. Reasonable and necessary attorney's fees incurred to defend against the false criminal charges prosecuted by the City of Manvel by and through the Mavel Police Department.

B. Reasonable and necessary attorney's fees in the past incurred for the prosecution of this violation of civil rights claim against the City of Manvel by and through the Manvel Police Department.

C. Lost earnings and earning capacity in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

D. Lost earnings and earning capacity that will in reasonable probability occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

E. Mental Anguish in the past proximately caused by the violation of Freddie Douglas' civil rights by the City of Mavel by and through the Manvel Police Department.

F. Mental Anguish that in reasonable probability will occur in the future as a proximate result of the violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

G. Injury to reputation in the past proximately caused by violation of Freddie Douglas' civil rights by the City of Manvel by and through the Manvel Police Department.

H. Injury to reputation that will in reasonable probability occur in the future proximately caused by the violation of the civil rights of Freddie Douglas by the City of Manvel by and through the Manvel Police Department.

I. Medical expenses in the past incurred by Freddie Douglas proximately caused by violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

J. Medical expenses in the future that will in reasonable probability be incurred by Freddie Douglas, that are proximately caused by the violation of his civil rights by the City of Manvel by and through the Manvel Police Department.

K. Exemplary damages in accordance with the Texas Civil Practice and Remedies Code §41.001 et seq

## COUNT IX
## FREDDIE DOUGLAS - DAMAGES–LIBEL, SLANDER, DEFAMATION, AND MALICIOUS PROSECUTION (AMANDA ZAWIERUSZYNSKI)

**105.** As a result of AZ's libel, slander, defamation of character and malicious prosecution, Freddie Douglas seeks all elements of damage authorized by law including but not limited to:

A. Damage to Freddie Douglas' professional reputation in the past and in the future.

B. Damage to Freddie Douglas' personal reputation in the past and in the future.

C. Mental Anguish in the past was proximately caused by the wrongful conduct of AZ.

D. Mental Anguish that will in reasonable probability occur in the future that is proximately caused by the wrongful conduct of AZ.

E. Exemplary Damages in accordance with Texas Civil Practice and Remedies Code, §41.001 et seq.

## JOHN MARKS – DAMAGES

**106.** John Marks incorporates by reference all the factual allegations and claims as stated above and in addition would show unto the Court the following comprehensive damages he seeks against all Defendants:

a) Lost wages from the time of wrongful arrest and detention to the present.

b) Diminished earning capacity due to damage to professional reputation and the emotional and psychological impact of the Defendants' actions.

c) Estimated lost earnings over Plaintiff's expected working life.

d) Reimbursement for all reasonable and necessary attorney's fees and costs incurred in defending against the false criminal charges and prosecuting this civil rights and tortious conduct lawsuit.

e) Compensation for medical expenses incurred as a direct result of the Defendants' actions, including psychological counseling and therapy, medical treatment for physical injuries sustained during arrest and detention, and future medical and psychological expenses reasonably anticipated due to ongoing trauma and distress.

f)    Damages for the severe emotional distress, mental anguish, and suffering experienced in the past and that will, in reasonable probability, occur in the future as a result of the Defendants' actions.

g)    Emotional trauma from the wrongful arrest, detention, and prosecution.

h)    Mental anguish from the loss of personal freedom and public humiliation.

i)    Anxiety, depression, and post-traumatic stress disorder (PTSD) symptoms resulting from the Defendants' misconduct.

j)    Compensation for the damage to his personal and professional reputation caused by the false allegations, wrongful arrest, and media coverage.

k)    Loss of professional opportunities and standing in the community.

l)    Social ostracism and damage to personal relationships.

m)    Damages for the loss of enjoyment of life and the inability to engage in normal activities and pursuits due to the emotional and psychological impact of the Defendants' actions.

n)    Punitive damages against the individual Defendants (Officer Taner Truitt, Chief Thomas (Keith) Traylor, and Officer Ruiz) for their willful, wanton, and malicious conduct, including deliberate fabrication and omission of evidence, excessive use of force and unlawful detention, tampering with evidence to obstruct justice, and malicious prosecution and abuse of power.

o)    Exemplary damages in accordance with Texas Civil Practice and Remedies Code § 41.001 et seq. to serve as a deterrent and to set an example against such egregious conduct by law enforcement officers and other defendants.

## JURY DEMAND

107.    Plaintiffs have demanded that this case be presented to a jury at the time of trial and that the jury decide all presented issues of fact.  The Plaintiffs have paid the required jury fee at the time of filing of their Original Petitions for the privilege of having a jury decide this case.

## ALL CONDITIONS PRECEDENT

108.    All conditions precedent to the filing of this lawsuit have occurred or have been performed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Freddie Douglas and John Marks pray that the Defendants be cited to appear before this Court and that upon full and final hearing that he be

awarded full and just damages for injury caused by the wrongful conduct of the Defendants and for all other relief, in equity and at law, to which he may show himself justly entitled.

Respectfully submitted,

**MIKE KERENSKY, PLLC**

By: _/s/ Michael W. Kerensky_ .
     Michael W. Kerensky
     Texas Bar No. 11331500
     5005 Woodway Drive, Suite 350
     Houston, Texas 77056
     713 221-3806 – Telephone
     713 228-6138 – Facsimile
     mike@kerenskylawfirm.com

**ATTORNEY FOR PLAINTIFF
FREDDIE DOUGLAS**


-and-

**STAFFORD MOORE, PLLC**

By: _/s/Justin A. Moore_
Justin A. Moore
State Bar No. 24088906
justin@staffordmoore.law
www.staffordmoore.law
Paul K. Stafford
State Bar No. 00791716
STAFFORD MOORE, PLLC
325 N. St. Paul Street, Suite 2210
Dallas, Texas 75201
Telephone (Main): (214) 764-1529
Telephone (Direct): (214) 764-1531
Facsimile: (214) 580-8104

**ATTORNEYS FOR PLAINTIFF
JOHN MARKS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been filed electronically and sent to all parties by operation of the Court's electronic filing system on March 13, 2026.

*/s/ Michael W. Kerensky* .
**Michael W. Kerensky**